**NEWARK ROOFING CONTRACTORS ASSOCIATION, Plaintiff,**

v.

**COMPOSITION ROOFERS, DAMP AND WATERPROOF WORKERS, LOCAL UNION NO. 4 OF NEWARK, NEW JERSEY, AND VICINITY, AFL–CIO, Broad National Bank, Composition Roofers Local No. 4 Vacation Fund, and John J. Critchley, Defendants.**

**Civ. A. No. 618–67.**

United States District Court
D. New Jersey.

July 6, 1967.

Apruzzese & McDermott, Newark N. J., for plaintiff, by Vincent J. Apruzzese, Newark, N. J.

Teltser, Byrne & Greenberg, Newark, N. J., for Local No. 4 and John J. Critchley, by Martin L. Greenberg, Newark, N. J.

Francis Margalotti, Newark, N. J., for Broad Nat. Bank.

## OPINION

WORTENDYKE, District Judge:

This action is brought by an association of employers against a labor organization, its business agent and a bank in the City of Newark, New Jersey, in which have been deposited monies paid by members of the plaintiff Association to the bank and credited to the respective Local members purportedly for vacation fund pur-

poses. This Court has jurisdiction of the parties and of the plaintiff's cause of action against the Local and its business agent under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; also ancillary jurisdiction of plaintiff's cause of action against the defendant bank and the Local's business agent.

On June 7, 1967, plaintiff Association filed its complaint upon which this Court made an Order, returnable June 29, 1967, directing the defendants to show cause why the defendants should not be restrained from prosecuting an action then pending in the Chancery Division of the Superior Court of New Jersey, brought by the defendant local against the defendant bank, praying for an Order directing the bank to make payments to members of the Local from the monies standing to the credit of said respective members with the bank.

The complaint in this Court, in addition to the essential jurisdictional allegations required by Section 301 of the Act, alleges in substance that Composition Roofers Local No. 4 Vacation Fund (hereinafter referred to as Vacation Fund) is an alleged trust purporting to exist for the alleged purpose of receiving and collecting contributions made by *employer* members of plaintiff Association whose *employees* are members of the defendant Local, and that the defendant bank "is now holding on deposit for the account of said Vacation Fund, and the beneficiaries thereunder in one or more accounts, a large sum of money," and that the defendant Critchley, as business agent of the Local, exercises certain control over the Fund and the deposit and withdrawal of monies therein and therefrom.

It is further alleged that on May 14, 1964 plaintiff Association and defendant Local entered into a collective bargaining agreement which, by its terms, expired May 31, 1967 and provided that "the Union shall have the right upon 60 days written notice to the Employer to deduct from its wage rates any amount whatsoever for the purpose of establishing a vacation fund. In the event the Union does establish said vaca-

tion fund, then said fund shall be administered by three Employer representatives and three representatives from the Union. It is understood and agreed that withdrawals from said vacation fund shall only be permitted during the month of December of any year."

It is further alleged in the complaint before me that the Union exercised the right to require the establishment of a vacation fund and demanded that the employer members of plaintiff Association pay a certain portion of the wages of employee members of the Union to a vacation fund instead of directly to such employees as wages. Thereafter the Union issued to plaintiff's members weekly report forms relating to a thereon printed "Composition Roofers Local No. 4 Vacation Fund," to be used for the purpose of reporting the names and wage rates of the respective employees and the calculation of the amount of such wages to be contributed to the vacation fund, with instructions to the employer to mail the reports and contributed amounts to the bank. The defendant Critchley insisted upon the regular reporting and payment by the members of the Association of the vacation fund contributions as a condition to permitting members of the Local to be employed by members of the Association. With such requirements the members of the Association complied, and the complaint alleges that such employer members are ready and willing to continue such contributions either as wages to their employees or contributions "to a lawfully created and administered vacation fund." Plaintiff charges however that the defendants have failed to establish the Vacation Fund in accordance with the requirements of the collective bargaining agreement, and alleges that the so-called vacation fund is being held and administered unilaterally by the defendants without the designation or participation of the required three Employer representatives and three Union representatives contemplated by the language of the collective bargaining agreement. Plaintiff further charges that the conduct of the defendants with respect to

the monies being contributed by the employers for employee vacation purposes is violative of the provisions of Section 302(c) (5) (B) of the Act.

Plaintiff alleges that it is in doubt whether the monies which its members have been paying to their employees should be treated as wages, or as contributions to a vacation fund, and prays that the members of the Association be allowed to deposit and pay into this Court or to a receiver to be appointed by this Court all of the amounts of employer contributions due or hereafter to become due and that this Court declare the rights and status of the parties with respect to the legality of the alleged vacation fund and of the contributions made thereto and for an accounting of any contributions received by the fund from any of the members of the plaintiff Association. By way of further relief, plaintiff seeks specific enforcement of the vacation fund provisions of the collective bargaining agreement relating to the vacation fund, and the establishment and appointment of trustees for its administration.

The Order to Show Cause issued by this Court directed the defendants to show cause why they should not be restrained, pending the final hearing and determination of this action, from proceeding with the action brought by the Union against the Bank in the Chancery Division of the Superior Court of New Jersey.

In the New Jersey action brought by the Union against the Bank the Honorable Nelson K. Mintz, Judge of the New Jersey Superior Court, on June 21, 1967, ordered the Bank to show cause on June 30, 1967 why an order should not be entered directing the Bank to make payments to members of the Union from their accounts on demand of said members, pursuant to a specific authorization from the Union allowing such withdrawal.

Upon the return date fixed in this Court's Order to Show Cause the parties appeared by counsel and oral argument was made and evidence presented upon

which this Court finds and concludes as follows:

The collective bargaining agreement accorded to the Union the right, upon 60 days written notice to the employer, "to deduct from its wage rates any amount whatsoever for the purpose of establishing a vacation fund." Such notice was given by the Union to the employer, and the employer deducted from the wages of its employees successive proportions of their respective weekly wage earnings at the rate prescribed by the Union. These deductions were paid by the employer and deposited with the defendant bank which credited the amount to the particular employee from whose wages the deduction was made.

There was never created a Vacation Fund within the contemplation of Section 6.6 of Article VI of the collective bargaining agreement between the Employer and the Union for the reason that the respective representatives of the Employer and of the Union required by the provisions of the collective bargaining agreement were never designated by the parties, and there were therefore no persons authorized to administer the fund. The respective weekly report forms prepared by the Union and furnished to the Employer for use in making the Employer's deposits in the Bank for the respective accounts of the Employer's employees and the records of the Bank crediting to the respective employees the deposits made by the Employer, are not consistent with the existence of a Vacation Fund into which the successive payments by the Employer became merged. By its conduct in employing the report forms furnished by the Union, the Employer recognized that the amounts which it entered therein opposite the respective names of its employees were to be credited by the Bank to the respective employees who alone became entitled not only to the deposits made for his account but also to that employee's proportionate share of the total interest earned upon the aggregate of all of the deposits. The provision in the collective bargaining agreement for the designation of representatives of the respective parties thereto to administer the fund left the administration thereof in the Bank and resulted in the continuance of the debtor-creditor relationship between the Bank and each employee to whose credit the Bank carried a debit in the amount received for that employee's account from his employer.

The Bank and the Union entered into a written agreement dated May 10, 1964, a copy of which is annexed to the affidavit of the defendant Critchley and submitted on return of the Order to Show Cause in this case. That written agreement recites that (a) the Union and various employers have agreed to establish certain savings accounts for individual employees of those employers who are members of the Union; (b) the purpose of such savings accounts is to facilitate vacation savings plans for members of the Union; (c) the Bank has agreed to establish such savings accounts and to process deposits therein and withdrawals therefrom subject to the terms and conditions of the said agreement. Those terms and conditions are as follows:

1. The Bank agrees to establish *individual savings accounts* for the members of the Union who are employees of employers designated by the Union.

2. The Union agrees to arrange with the employers of the employees for whom the said Savings Accounts are to be established to remit to the Bank all monies for such accounts.

3. The Bank is under no duty to collect any funds from any Employer.

4. The Bank argees to establish *each savings account* in accordance with a "Savings Account Contract" set forth in the agreement.

5. The Bank agrees to establish *a savings account for each employee* provided that the Savings Account Contract bears the signatures of the individual employee and of the business manager of the Union.

6. A Savings Account Contract of Deposit containing the terms and conditions thereof is set forth therein. Those terms and conditions include the requirement that a statement of the funds forwarded to the Bank by the Employer will be mailed to the depositor by the Bank four times a year; in the event of the death of the depositor, all funds in his account will be remitted to the Union as trustee for decedent's beneficiary; money may be withdrawn from the account only upon presentation to the Bank of written authorizations of the Union consenting to such withdrawal except that no such consent is required for withdrawals by the depositor during the months of December or January during which months withdrawals may be made upon the depositor's signature alone; monies not withdrawn within a twenty-four month period after last deposit become the property of the Union and the depositor agrees to such forfeiture and exonerates the Bank in such case; the Bank assumes no responsibility for the collection of monies for the account and is authorized to confirm at quarterly intervals to the depositor and to the Union the current balances therein.

This agreement between the Union and the Bank, which is clearly not binding either upon the Employer or upon the Employee, contains further provisions relating to payment of interest by the Bank "on monies in all accounts established under this agreement at the rate it presently pays on deposits in savings accounts;" agrees to mail four statements to each employee for whom a savings account is established and to the Union respectively; and the Union waives any and all right, title and interest to or in any monies received under the agreement except as set forth in the Contract of Deposit therein set forth. Further provisions of this written agreement between the Bank and the Union are irrelevant to this decision.

▓ Both Association and Union concede that no Vacation Fund within the contemplation of the collective bargaining agreement was ever set up or administered. It clearly appears to the Court which finds that savings accounts, in the respective names and for the respective benefits of the employees, were set up with the Bank into which were deposited periodically by the Employer certain percentages of wages earned by the respective Employees. Each Employee acquired exclusive title to the amount of the remittance made by his Employer to the Bank, for his account, and the right, title and interest of each Employee in such monies was conceded by the Employer, the Bank and the Union. It follows, therefore, that the Employee's right to the money credited to his account on the books of the Bank was not limited, as between him and the Bank, by the terms of the agreement between the Bank and the Union; except insofar as the By Laws of the Local may have authorized the Business Agent of the Local to agree with the Bank to limit the Employee's right to withdraw monies credited to him in his savings account with the Bank. We need not be concerned respecting the rights and obligations of the Employee and his Local, *inter sese.* In this case the Local insists that the monies in the Bank Accounts with the Bank belong to the respective Employees in whose names they stand and, therefore, that they may be withdrawn by the respective Employees at any time. While the Union's agreement with the Bank purports to require the Local's consent to the Employee's withdrawal of funds, that consent may not be withheld. Indeed, if it should be withheld, the Employee would have a cause of action against the Bank to compel it to honor the Employee's withdrawal even without the Union's consent.

For the reasons aforesaid it is the Opinion of this Court that its order to show cause and the restraints therein set forth should be dissolved; that each

and any of the Employees to whose credit stand deposits in the Bank upon which interest has accrued is at liberty to withdraw the amount or amounts thereof with or without the consent of the Local; and that such future contributions as the Employer members of the plaintiff Association may see fit to make to the Bank, to the credit of any such Employer's Employee who may be a member of the defendant Union, may be deposited in the defendant Bank or in any other bank which may be approved by the Employee and by the Local.

The Vacation Fund contemplated by the Collective Bargaining Agreement never came into existence. The agreement has expired by its terms. Therefore, the provisions in the agreement for the creation, maintenance and administration of a vacation fund are no longer effective. If the Union and the Association are in the process of negotiating for a new Collective Bargaining Agreement, the creation of such a fund must await the consummation of such negotiations.

The Court finds that no relief, other than that herein indicated as available, may be had by the plaintiff for the causes alleged in the complaint.

Let an Order in conformity with the foregoing Opinion be presented.